## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 3, 2005

The Honorable Todd Staples
Chair, Committee on Transportation and
   Homeland Security
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0320

Re: Whether the Athens Economic Development Corporation may expend funds for highway construction adjacent to an industrial park (RQ-0289-GA)

Dear Senator Staples:

You ask whether the Athens Economic Development Corporation ("AEDC") may expend funds for highway construction adjacent to an industrial park.[1]

The Athens Economic Development Corporation is organized under section 4A of the Development Corporation Act of 1979. *See* Request Letter, *supra* note 1, at 1; *see also* TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 2004-05) ("article 5190.6" or the "Act"). The AEDC derives its revenue from City of Athens sales tax proceeds levied pursuant to section 4A of the Act. *See* Request Letter, *supra* note 1, at 1. The AEDC acquired real property in the City of Athens and established an industrial park, which includes facilities for manufacturing and industrial firms, primary job training (currently used by Trinity Valley College), and a 400,000 square foot warehouse. *See id.* at 1-2.

The park is located on FM Road 1616 near its intersection with Loop 317. Several fatal traffic accidents have occurred at the intersection, and the Texas Department of Transportation ("TxDOT") has determined that in order to remedy what it deems an "unacceptably dangerous condition," one road must pass over the other. *Id.* at 1. You state that TxDOT has made plans for FM Road 1616 to pass over Loop 317 in a project to be funded by both the federal and state governments, except for $50,000. *See id.* As you explain, while the City of Athens could fund that amount, the overpass would or could not be built to include entrance and exit ramps between the two roads. *See id.* Currently, FM 1616 provides the sole access to the industrial park. *Id.* Without a traffic interchange at that location, traffic from Loop 317 could not reach the park except by a cumbersome, circuitous route through the city. *See id.* at 2. Such a configuration would render the

---

[1]*See* Letter from Honorable Todd Staples, Chair, Committee on Infrastructure Development & Security (now Chair, Committee on Transportation and Homeland Security), Texas State Senate, to Honorable Greg Abbott, Texas Attorney General (Nov. 2, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

industrial park less attractive, if not unacceptable, to existing users as well as prospective enterprises. In particular, without access to Loop 317, the park would not be suitable as a distribution center, one of the park's potential uses as originally conceived by the AEDC. *See id.*

TxDOT has presented an alternative plan, whereby Loop 317 would pass over FM 1616. This alternative layout would allow entrance and exit ramps from one road to the other. *See id.* While the alternative plan would enhance the industrial park's accessibility, it would require $700,000 from sources other than the federal and state governments. *See id.* You state it is unlikely that the city could make that amount of money available, but the AEDC may be able to contribute an amount sufficient to make the alternative construction plan feasible. *See id.* You ask whether the Act authorizes such an expenditure.

The Act authorizes municipalities to create an industrial development corporation, which is "a corporation created and existing under the provisions of this Act as a constituted authority for the purpose of financing one or more projects." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(10) (Vernon Supp. 2004-05). Such corporations are commonly referred to as "economic development corporations" ("EDCs"), or more specifically as "4A corporations" or "4B corporations," in reference to the specific sections of the Act governing the creation and authority of EDCs. *See id.* §§ 4A, 4B. The AEDC, as a 4A corporation, is subject to section 4A's provisions that may limit the authority to undertake a particular project, as well as to other limitations in the Act.[2] Your questions, however, focus specifically on portions of section 2(11)(A) and section 4A(i), and we limit our review accordingly. Section 2(11)(A) of the Act contains three definitions of a "project." *Id.* § 2(11)(A).[3] You suggest that an expenditure for construction of an interchange allowing access to

---

[2]For example, section 4A authorizes a municipality to adopt sales and use taxes for an EDC's benefit by submitting a ballot proposition to the voters. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(d), (m)-(s) (Vernon Supp. 2004-05). Such a proposition may or may not contain terms limiting the use of such revenues to specific projects. *See id.* § 4A(r). Additionally, a 4A corporation's use of funds may be limited by financial arrangements in the corporation's bonds. *See, e.g., id.* §§ 4A(f), 25(e). You do not ask about, nor do we address these potential limitations.

[3]In full, the definition provides:

> "Project" shall mean the land, buildings, equipment, facilities, expenditures, targeted infrastructure, and improvements (one or more) that are for the creation or retention of primary jobs and that are found by the board of directors to be required or suitable for the development, retention, or expansion of manufacturing and industrial facilities, research and development facilities, transportation facilities (including but not limited to airports, ports, mass commuting facilities, and parking facilities), sewage or solid waste disposal facilities, recycling facilities, air or water pollution control facilities, facilities for the furnishing of water to the general public, distribution centers, small warehouse facilities capable of serving as decentralized storage and distribution centers, primary job training facilities for use by institutions of higher education, and regional or national corporate headquarters facilities.

> "Project" also includes job training required or suitable for the promotion of development and expansion of business enterprises and other enterprises described by this Act, as provided by Section 38 of this Act.

(continued...)

the park from Loop 317 meets two of the three definitions of a "project" in section 2(11)(A), the first and the third. *See* Request Letter, *supra* note 1, at 2. As we are able to answer your question based on the third definition in the section, we need not consider the first definition.

The third definition of a "project" in section 2(11)(A) specifically includes "streets and roads" among the kinds of infrastructure that may the subject of a project under the Act:

> "Project" also includes expenditures found by the board of directors [of the EDC] to be required or suitable for infrastructure necessary to promote or develop new or expanded business enterprises limited to streets and roads, rail spurs, water and electric utilities, gas utilities, drainage and related improvements, and telecommunications and Internet improvements.

TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(11)(A) (Vernon Supp. 2004-05). According to the language of the statute, such a project is to be based on findings by the EDC's board of directors. *See id.* Under this definition of project, the board must find that (1) an expenditure is required or suitable for the proposed infrastructure and (2) the infrastructure is "necessary" to promote or develop new or expanded business enterprises. *See id.*

The exchange construction you describe seems almost certainly to be encompassed by the phrase "streets and roads." Request Letter, *supra* note 1, at 1-2. You inform us that the AEDC seeks to sell a facility in the industrial park to a new owner who would use it for distribution. *See id.* at 2. You suggest that attracting such a new enterprise may hinge on the proposed interchange construction. *See id.* Consequently, the board could determine that the construction is "necessary to promote or develop new or expanded business enterprises" and that the expenditure is "required or suitable" for the construction. TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(11)(A) (Vernon Supp. 2004-05).

While the interchange construction project may meet one or more of the general definitions of a "project" in section 2(11)(A), section 4A contains other provisions specifically applicable to projects undertaken by corporations formed under that section. You are specifically concerned about section 4A(i), which prohibits a 4A corporation from providing certain "transportation facilities," even though they may meet one of the general definitions of a "project":

> Except as provided by this subsection, the corporation may not undertake a project the primary purpose of which is to provide

---

[3](...continued)
> "Project" also includes expenditures found by the board of directors to be required or suitable for infrastructure necessary to promote or develop new or expanded business enterprises limited to streets and roads, rail spurs, water and electric utilities, gas utilities, drainage and related improvements, and telecommunications and Internet improvements.

TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(11)(A) (Vernon Supp. 2004-05).

transportation facilities, solid waste disposal facilities, sewage facilities, facilities for furnishing water to the general public, or air or water pollution control facilities. However, the corporation may provide those facilities to benefit property acquired for a project having another primary purpose.

TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(i) (Vernon Supp. 2004-05); *see also* Request Letter, *supra* note 1, at 2-3. Assuming that the primary purpose of the proposed interchange construction is to provide "transportation facilities," then section 4A(i) would preclude the AEDC from undertaking the construction as a project unto itself. But that prohibition does not apply to an expenditure that benefits projects having a different primary purpose, such as the industrial park. As you describe the industrial park, its principal purpose is to establish facilities expressly included within section 2(11)(A)'s first definition: manufacturing and industrial facilities, primary job training facilities, and warehouse and distribution facilities. *See* Request Letter, *supra* note 1, at 1-2. Assuming these facilities are for the retention or creation of primary jobs, we conclude that section 4A(i) does not prohibit the AEDC from making an expenditure for the proposed construction.

## S U M M A R Y

An expenditure for road construction may qualify as a "project" under section 2(11)(A) of the Development Corporation Act of 1979, provided the board of directors of an industrial development corporation finds that the expenditure is "required or suitable for infrastructure necessary to promote or develop new or expanded business enterprises." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(11)(A) (Vernon Supp. 2004-05). Section 4(A)(i) of the Act does not preclude a 4A corporation from providing a transportation facility that benefits property acquired for another authorized project.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee